Calvin L. Litsey (CSB 289659)
Helen E. Chacon (CSB 293067)
FAEGRE BAKER DANIELS LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone:  (650) 324-6700
Fax:  (650) 324-6701
Email:  calvin.litsey@FaegreBD.com
Email:  helen.chacon@FaegreBD.com

James W. Poradek (*pro hac vice*)
Chad Drown (*pro hac vice*)
Lauren J. Frank (*pro hac vice*)
Emily E. Chow (*pro hac vice*)
Eva B. Stensvad (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402
Telephone:  (612) 766-8800
Fax:  (612) 766-1600
Email:  james.poradek@FaegreBD.com
Email:  chad.drown@FaegreBD.com
Email:  lauren.frank@FaegreBD.com
Email:  emily.chow@FaegreBD.com
Email:  eva.stensvad@FaegreBD.com

Attorneys for Defendants Global Traffic Technologies,
LLC and Global Traffic Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KM ENTERPRISES, INC. and RODNEY KRIS MORGAN<br><br>                Plaintiffs,<br><br>     vs.<br><br>GLOBAL TRAFFIC TECHNOLOGIES, LLC and GLOBAL TRAFFIC TECHNOLOGIES, INC.,<br><br>                Defendants. | Case No.: 3:14-cv-04906-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 5, 2015<br>Time:       10:00 a.m.<br>Courtroom: 4 – 17th Floor<br>Judge:    Hon. Vince Chhabria |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

      NOTICE IS HEREBY GIVEN that on February 5, 2015, at 10:00 a.m. or as soon thereafter

as counsel may be heard before the Honorable Vince Chhabria of above-entitled Court, located at

1    450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 4, 17th Floor, Defendants

2    Global Traffic Technologies, Inc. and Global Traffic Technologies, LLC (collectively, "GTT") will

3    and hereby do move this Court for an order dismissing this case pursuant to Federal Rules of Civil

4    Procedure 12(b)(1) and 12(b)(6).

5         This Motion is based on this Notice of Motion and Motion, the following Memorandum of

6    Points and Authorities, the accompanying Declaration of Lauren J. Frank, all pleadings and papers

7    filed in this action, and any other evidence or argument presented to the Court.

8

9    Dated:  December 23, 2014            FAEGRE BAKER DANIELS LLP

10

11                      By: /s/ *Lauren J. Frank*

12                      Calvin L. Litsey (CSB 289659)
                            Helen E. Chacon (CSB 293067)

13                      FAEGRE BAKER DANIELS LLP
                            1950 University Avenue, Suite 450

14                      East Palo Alto, CA 94303
                            Telephone:  (650) 324-6700

15                      Fax:  (650) 324-6701
                            Email:  calvin.litsey@FaegreBD.com

16                      Email:  helen.chacon@FaegreBD.com

17                      James W. Poradek (*pro hac vice*)
                            Chad Drown (*pro hac vice*)

18                      Lauren J. Frank (*pro hac vice*)
                            Emily E. Chow (*pro hac vice*)

19                      Eva B. Stensvad (*pro hac vice*)
                            FAEGRE BAKER DANIELS LLP

20                      2200 Wells Fargo Center
                            90 South 7th Street

21                      Minneapolis, MN  55402
                            Telephone:  (612) 766-8800

22                      Fax:  (612) 766-1600
                            Email:  james.poradek@FaegreBD.com

23                      Email:  chad.drown@FaegreBD.com

24                      Email:  lauren.frank@FaegreBD.com
                            Email:  emily.chow@FaegreBD.com

25                      Email:  eva.stensvad@FaegreBD.com

26                      Attorneys for Defendants Global Traffic
                      Technologies, LLC and Global Traffic

27                      Technologies, Inc.

28

# TABLE OF CONTENTS

INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

LEGAL STANDARD FOR MOTIONS TO DISMISS ................................................. 2

ARGUMENT ................................................. 3

I.    THE COMPLAINT FAILS TO ALLEGE AN ANTITRUST VIOLATION. ................................................. 3

    A.    None of the Alleged Activities Are Anticompetitive ................................................. 3

    B.    The Complaint Alleges No Antitrust Injury ................................................. 6

    C.    The Complaint Alleges No Facts Regarding GTT's Activities. ................................................. 7

    D.    The Complaint Does Not Allege an Antitrust Conspiracy ................................................. 8

II.    THE ALLEGED CONDUCT IS IMMUNE UNDER NOERR-PENNINGTON. ................................................. 8

III.    KME AND MORGAN LACK STANDING TO BRING THESE CLAIMS ................................................. 10

IV.    KME'S CLAIMS ARE BARRED UNDER RES JUDICATA. ................................................. 10

CONCLUSION ................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*In re Airport Car Rental Antitrust Litig.*,
    521 F. Supp. 568 (N.D. Cal. 1981) ............................................................................ 6, 10

*In re Airport Car Rental Antitrust Litig.*,
    693 F.2d 84 (9th Cir. 1982) ........................................................................................ 2, 8-9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 2, 3, 8

*Asphalt Paving Sys., Inc. v. Asphalt Maint. Solutions, LLC*,
    2013 WL 1292200 (E.D. Pa. Mar. 28, 2013) .................................................................... 9

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) .......................................................................................................... 7

*Banks v. Int'l Union Elec., Elec., Technical, Salaried & Machine Workers*,
    390 F.3d 1049 (8th Cir. 2004) ................................................................................... 12-13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................... 3

*Belluomini v. Citigroup, Inc.*,
    2013 WL 3855589 (N.D. Cal. July 24, 2013) ............................................................... 7-8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) .......................................................................................................... 6

*Crystal Import Corp. v. AVID Identification Sys. Inc.*,
    582 F. Supp. 2d 1166 (D. Minn. 2008) ........................................................................... 15

*Datel Holdings Ltd. v. Microsoft Corp.*,
    712 F. Supp. 2d 974 (N.D. Cal. 2010) ........................................................................... 6, 7

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006) ......................................................... 4, 6, 7, 9, 10

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961) ..................................................................................................... 9, 10

*Engelhardt v. Bell & Howell Co.*,
    327 F.2d 30 (8th Cir. 1964) ............................................................................................ 15

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014) ............................................................................ 3

*Global Traffic Techs., LLC v. Emtrac Sys., Inc.*,
   946 F. Supp. 2d 884 (D. Minn. 2013) .................................................................. 1

*Gough v. Rossmoor Corp.*,
   585 F.2d 381 (9th Cir. 1978) .............................................................................. 4

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
   707 F.3d 1114 (9th Cir. 2013) .......................................................................... 10

*Heisen v. Pac. Coast Bldg. Prods., Inc.*,
   26 F.3d 130, 1994 WL 250036 (9th Cir. May 24, 1994) (unpublished)............... 3, 6

*Hufsmith v. Weaver*,
   817 F.2d 455 (8th Cir. 1987)........................................................................ 12, 14-15

*Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005) ............................................................................ 8

*Jones v. Niagara Frontier Transp. Auth.*,
   836 F.2d 731 (2d Cir. 1987) ........................................................................... 2, 10

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ......................................................................... 3, 8

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ............................................................................. 1

*KM Enters., Inc. v. McDonald*,
   2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. Apr. 30,
   2013) ....................................................................................................................... 1

*Kottle v. Nw. Kidney Ctrs.*,
   146 F.3d 1056 (9th Cir. 1998) ............................................................................ 9

*Laase v. Cnty. of Isanti*,
   638 F.3d 853 (8th Cir. 2011) ............................................................................. 11

*Lane v. Peterson*,
   899 F.2d 737 (8th Cir.1990) .............................................................................. 11

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) ........................................................................... 6, 7

*Love Terminal Partners, LP v. City of Dall.*,
   527 F. Supp. 2d 538 (N.D. Tex. 2007) ................................................................ 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................... 2, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................................ 5

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ............................................................ 3, 6, 7

*Meade v. Kiddie Acad. Domestic Franchising, LLC*,
   2012 WL 4857183 (3d Cir. Oct. 15, 2012) ...................................... 10

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ........................................... 3, 8

*Mills v. Des Arc Convalescent Home*,
   872 F.2d 823 (8th Cir.1989) ............................................................ 15

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
   833 F.2d 1342 (9th Cir. 1987) ......................................................... 3

*Paladin Assocs., Inc. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ......................................................... 5

*Pink Supply Corp. v. Hiebert, Inc.*,
   788 F.2d 1313 (8th Cir. 1986) ......................................................... 8

*Pool Water Prods. v. Olin Corp.*,
   258 F.3d 1024 (9th Cir. 2001) ......................................................... 7

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ........................................................... 5

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ........................................................... 3, 7

*Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*,
   401 F.3d 123,132-33 (3d Cir. 2005) ............................................... 5, 6

*Sec. Fire Door Co. v. Cnty. of L.A.*,
   484 F.2d 1028 (9th Cir. 1973) ................................................. 1, 4, 5, 8

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ........................................................... 6

*Stearns Airport Equip. Co. v. FMC Corp.*,
   170 F.3d 518 (5th Cir. 1999) ............................................... 1, 4, 5, 6, 10

*Triple M Roofing Corp. v. Tremco, Inc.*,
   753 F.2d 242 (2d Cir. 1985) ............................................................ 4, 6

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) ......................................................................... 9

*United States v. Brekke*,
   97 F.3d 1043 (8th Cir. 1996) ........................................................... 2, 11

iv

*United States v. California & Oregon Land Co.*,
  192 U.S. 355 (1904) ................................................................................ 10-11

*United Techs. Corp. v. Chromalloy Gas Turbine Corp.*,
  189 F.3d 1338 (Fed. Cir. 1999) ............................................................... 15

*Williams v. I.B. Fischer Nev.*,
  999 F.2d 445 (9th Cir. 1993) ..................................................................... 4

**STATE CASES**

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*,
  77 Cal. Rptr. 3d 695 (Cal. Ct. App. 2008) ................................................ 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 9

Fed. R. Civ. P. 12(c) ....................................................................................... 12

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs KM Enterprises, Inc. and Rodney Kris Morgan (collectively, "KME") are serial litigants who have repeatedly (and unsuccessfully) attempted to litigate the **same allegations** against Global Traffic Technologies, Inc. and Global Traffic Technologies, LLC (collectively, "GTT"), municipalities, and agency officials under a variety of different (and meritless) legal theories. *See, e.g.*, *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013) (affirming dismissal of Sherman Act claims); *Global Traffic Techs., LLC v. Emtrac Sys., Inc.*, 946 F. Supp. 2d 884, 909-10 (D. Minn. 2013) (dismissing KME's tortious-interference counterclaim); *KM Enters., Inc. v. McDonald*, 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. Apr. 30, 2013) (dismissing KME's claims against commissioner of New York State Department of Transportation).   KME now tries yet again.  But as in those prior cases, here, too, KME's claims must fail.

KME's Complaint fails for at least four independent reasons.  ***First***, KME fails to allege any facts that, even if true, constitute an antitrust violation.  At its core, the Complaint alleges that GTT limited the "freedom of choice of the agency officials" by persuading agencies to adopt bid specifications in GTT's favor.  (*E.g.*, Compl. ¶¶ 5, 50-54, 141-43, 174-77, 240, 291.)  But the Ninth Circuit specifically held forty years ago—in affirming the Rule 12(b)(6) dismissal of an antitrust complaint—that **as a matter of law** it is not an antitrust violation for a company "to tout the virtues of his particular [product] in an effort to secure favorable specifications."  *Sec. Fire Door Co. v. Cnty. of L.A.*, 484 F.2d 1028, 1031 (9th Cir. 1973).  In fact, "[c]ourts that have considered whether attempts to convince independent government purchasers to adopt specifications in their favor prior to bidding are a violation of the antitrust laws **have uniformly found** such behavior **not** to be a violation."  *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 522 (5th Cir. 1999).[1]  Accordingly, KME's Complaint fails to state a claim upon which relief may be granted and should be dismissed with prejudice.

***Second***, even if GTT had engaged in some nebulous "campaign of disinformation" (*e.g.*,

---

[1] All (Ex. ___) citations are to the Declaration of Lauren J. Frank, and all emphases are added unless noted.

Compl. ¶¶ 5, 299) in order to influence government officials to select GTT's products, the Ninth

Circuit has specifically held that "[i]t is undisputed that the [*Noerr-Pennington* doctrine] protects

efforts to influence officials making essentially commercial decisions on behalf of a governmental

entity," *In re Airport Car Rental Antitrust Litig.*, 693 F.2d 84, 85-86, 87 (9th Cir. 1982).

　　　　**Third**, KME and Morgan lack standing to assert these claims.  Morgan "does not have

standing to assert claims alleging wrongs to [KME]."  *See Jones v. Niagara Frontier Transp. Auth.*,

836 F.2d 731, 736 (2d Cir. 1987).  And KME lacks Article III standing because its alleged

injuries—*i.e.*, lost bidding opportunities and fewer contracts (*e.g.*, Compl. ¶¶ 26-27)—were "the

result of the independent action of some third party not before the court," and are not "fairly

traceable" to any action by GTT.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

　　　　**Finally**, and perhaps most fundamentally, KME's antitrust claims are barred by *res judicata*.

The law simply does not allow KME to repeatedly seek a "do over" on claims that it has raised (or

could have raised) in prior litigation.  After GTT sued Morgan (and later KME) in the District of

Minnesota for willful patent infringement, KME filed a separate lawsuit asserting, among other

things, a claim for tortious interference, which was consolidated with GTT's patent case

("Minnesota Litigation").  (Ex. 1.)  The tortious interference claim was based on allegations that

GTT violated federal and state antitrust laws, by (1) influencing cities to include GTT's technical

information in their bid specifications ("Specification Scheme"), and (2) providing misleading

information regarding GTT's and KME's products ("Misinformation Scheme").  These are the same

factual predicates underlying KME's antitrust claims against GTT in this case.  (*E.g.*, Compl. ¶¶ 4,

91, 50, 77, 141, 144, 226, 240 ("Specification Scheme"); *id.* ¶¶ 5, 52, 146, 172, 282

("Misinformation Scheme").)   KME cannot "bring[] repetitive lawsuits based on the same cause of

action," *United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996)—its claims here are barred by

*res judicata*.

## LEGAL STANDARD FOR MOTIONS TO DISMISS

　　　　To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citation omitted).  The Complaint must contain "well-pleaded **factual** allegations" that

"give rise to an entitlement to relief," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.  *Id.* at 678-79.  Legal conclusions "are not entitled to the assumption of truth."  *Id.* at 679.  And dismissal is appropriate "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1102 (N.D. Cal. 2012) (dismissing antitrust complaint).

## ARGUMENT

KME's Complaint fails for at least four independent reasons, each is addressed below.

## I.   THE COMPLAINT FAILS TO ALLEGE AN ANTITRUST VIOLATION.

The Complaint purports to assert antitrust claims under Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, and California's Cartwright Act.  (*See* Compl. ¶¶ 289-330.)[2]  All of these statutes require, among other things: (1) anticompetitive conduct, and (2) an antitrust injury, that is (3) caused by the defendant's anticompetitive conduct.  *See Heisen v. Pac. Coast Bldg. Prods., Inc.*, 1994 WL 250036, at *1 n.2 (9th Cir. May 24, 1994) (unpublished); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987).  In this case, the Complaint fails to allege any facts to support any of these required elements.  It alleges no activity whatsoever—and in particular, no activity by GTT—that amounts to an antitrust violation.  Moreover, to state a claim under Section 1 of the Sherman Act, Section 3 of the Clayton Act, and California's Cartwright Act, the Complaint must also allege an antitrust conspiracy—an element that is wholly absent here.  All of KME's claims should therefore be dismissed.[3]

### A.   None of the Alleged Activities Are Anticompetitive.

For any of KME's claims to survive a motion to dismiss, the Complaint must allege

---

[2] "[T]he elements for establishing a Sherman Act § 1 claim and a Clayton Act § 3 claim are virtually the same." *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1352 (9th Cir. 1987).  And the same analysis applies to claims under the Sherman and Cartwright Acts.  *E.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 n.4 (9th Cir. 1988).

[3] KME's claim under California's Unfair Competition Law also fails, because it is predicated on GTT's alleged violation of antitrust laws.  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1118 (E.D. Cal. 2014); Compl. ¶ 332.

3

anticompetitive conduct—*i.e.*, conduct that "robbed the consumer of its choice of product." *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 182 & n.10 (S.D.N.Y. 2006); *see also Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir. 1978) (antitrust claim requires an unreasonable "restraint on competition"); *Williams v. I.B. Fischer Nev.*, 999 F.2d 445, 448 (9th Cir. 1993) (activity that is not anticompetitive cannot form the basis of a Section 1 or 2 claim).  The allegations in the Complaint boil down to two basic schemes: (1) encouraging public agencies to draft bid specifications around GTT's products; and (2) making misleading statements to purchasers regarding the products, the Minnesota patent litigation, and competitive-bidding laws.  The problem for KME is that **none of these activities amounts to an antitrust violation**.

*"Specification Scheme."*  KME alleges that GTT engaged in a "de facto sole source scheme" whereby GTT "encouraged and aided public agencies to draft specifications" for its products "in such a way as to exclude [KME's] product."  (*See* Compl. ¶¶ 4, 91; *see also, e.g.*, *id.* ¶¶ 50, 77, 141, 144, 226, 240.)  But as a matter of law, it is not an antitrust violation for a company "to tout the virtues of his particular [product] in an effort to secure favorable specifications."  *Sec. Fire Door*, 484 F.2d at 1031.  In fact, "[c]ourts that have considered whether attempts to convince independent government purchasers to adopt specifications in their favor prior to bidding are a violation of the antitrust laws **have uniformly found** such behavior **not** to be a violation."  *Stearns*, 170 F.3d at 522.  Indeed, "jockeying over specifications and bid procedures is a **valid form of competition**," *id.* at 526, and "**promote[s]** rather than hinder[s] **competition**," *Triple M Roofing Corp. v. Tremco, Inc.*, 753 F.2d 242, 246 (2d Cir. 1985); *see also Doron*, 423 F. Supp. 2d at 186 (solicitation efforts amounted to "pro-competitive salesmanship, not corrupt or anticompetitive conduct").  And even if a purchaser violated competitive bidding statues by "sole-sourcing" or not "putting the job out to bid," such activity is still not "a restraint of trade" under the **antitrust** statutes.[4]  *Sec. Fire Door*, 484 F.2d at 1031; *Stearns*, 170 F.3d at 524-26.  "Here the choice of product by the purchaser . . . was expressed in the specifications," and the purchaser "simply

---

[4] "To the extent that the [agencies'] procurement violated state or local law, [KME's] proper remedy is a bid protest or lawsuit in the [respective] state courts, not a federal antitrust lawsuit." *Doron*, 423 F. Supp. 2d at 183.  "As long as the consumer . . . chose its product, the antitrust laws were not violated." *Id.*

favored the [GTT] system." *Sec. Fire Door*, 484 F.2d at 1031.  "If [KME] was 'excluded,' it was

excluded by [GTT's] superior product or business acumen," not by anticompetitive conduct.

*Stearns*, 170 F.3d at 526.

    ***"Misinformation Scheme."***  Though unclear, KME appears to allege that GTT made

various misrepresentations to customers, such as "falsely promis[ing]" to provide upgraded

equipment at "no charge" (Compl. ¶¶ 52, 146, 172), "provid[ing] disinformation to the agencies" as

to KME's infringement of GTT's patent (*id.* ¶¶ 5, 282), or engaging in some nebulous "campaign of

disinformation concerning the quality of KME's equipment and/or the features of GTT's

equipment" (*id.* ¶ 5).  Setting aside for the moment the fact that a jury unanimously found that KME

**did** willfully infringe GTT's patent, that KME's statements are entirely conclusory, and that

providing better products at lower prices is not anticompetitive, KME still fails to allege an antitrust

violation.  "[D]eception, reprehensible as it is, can be of no consequence so far as the Sherman Act

is concerned."  *Santana Prods, Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 132 (3d Cir.

2005) (quotations omitted).  Even if GTT made "wrong, misleading, or debatable" statements, such

conduct is still "indicative of competition on the merits."  *Stearns*, 170 F.3d at 524.  And "[t]o the

extent a competitor loses out . . . the natural remedy would seem to be an increase in the losing

party's sales efforts on future potential bids, not an antitrust suit."  *Id.* at 525.

    ***Other activities.***  To the extent the Complaint alleges that GTT engaged in any other

activities that are anticompetitive, such assertions are clearly not supported by law.  For example,

KME asserts that in connection with the bid in Brookhaven, New York, GTT was awarded the

contract after it lowered its quote so that it underbid KME by $70,000.  (Compl. ¶¶ 71-72.)  It is not

even clear, however, whether KME contends that this activity is anticompetitive.  Regardless,

"cutting prices in order to increase business often is the very essence of competition."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).  Indeed, "[l]ower prices are

almost always procompetitive."  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158

(9th Cir. 2003); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (act deemed

anticompetitive only if it "raises the price of goods above competitive levels or diminishes their

quality").  The Complaint also tangentially alludes to grant-writing assistance GTT may have

1    provided to the City of West Carrollton, Ohio.  (Compl. ¶¶ 5, 170.)  But KME "does not allege that

2    [GTT] engaged in coercive measures that prevented [KME] from selling its products to any willing

3    buyer or prevented others from dealing with [KME]." *Santana*, 401 F.3d at 132.  KME, too, could

4    have provided grant-writing assistance—it simply chose not to.  There is no exclusionary conduct or

5    "'restraint' in this alleged activity—and without a 'restraint,' there is 'no restraint of trade.'" *Id.*

6    (citation omitted); *see also Stearns*, 170 F.3d at 522 (describing "exclusionary conduct").

7              All of the alleged activities are, as a matter of law, **procompetitive**, not anticompetitive—

8    and the antitrust laws do not "provide a balm for the hardships occasioned by vigorous

9    competition." *Triple M Roofing Corp.*, 753 F.2d at 243.  The Complaint merely "attacks . . . action

10   to influence the decisions of others, not to impose a restraint upon trade such as a division of

11   markets, an agreement on prices or other suppression of competition." *In re Airport Car Rental

12   Antitrust Litig.*, 521 F. Supp. 568, 577 (N.D. Cal. 1981).  But "[t]hat kind of action falls outside the

13   scope of the [antitrust statutes]." *Id.*  KME's Complaint alleges no anticompetitive activity and

14   should be dismissed.

15             **B.      The Complaint Alleges No Antitrust Injury.**

16             "[T]o state a claim under either section 1 or section 2 of the Sherman Act, a plaintiff must

17   allege antitrust injury." *Heisen*, 1994 WL 250036 at *1; *see also McGlinchy*, 845 F.2d at 811;

18   *Doron*, 423 F. Supp. 2d at 180.  Indeed, a "causal antitrust injury is a substantive element of an

19   antitrust claim," which "must be alleged at the pleading stage." *Somers v. Apple, Inc.*, 729 F.3d

20   953, 963 (9th Cir. 2013).  An antitrust injury is "an injury of the type the antitrust laws were

21   intended to prevent," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977), "i.e.,

22   injury to the market or to competition in general, not merely injury to individuals or individual

23   firms." *Heisen*, 1994 WL 250036, at *1.  Pleading injury to competition requires factual allegations

24   related to "the relevant geographic and product markets and demonstration of the restraint's

25   anticompetitive effects within those markets." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,

26   884 F.2d 504, 508 (9th Cir. 1989).  And the alleged injury must be "proximately caused by the

27   defendant's antitrust violation, and not by some other act or event," *Datel Holdings Ltd. v.

28   Microsoft Corp.*, 712 F. Supp. 2d 974, 991 (N.D. Cal. 2010), even if that other act or event was

"illegal *per se*," *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).

KME pleads facts related only to its own "loss of numerous contracts," "loss of opportunity to bid," and "lost profits and diminished capital value." (*E.g.*, Compl. ¶¶ 26-27.) But KME's "allegation of market exclusion and resulting loss of income" is insufficient to plead an antitrust injury, as it establishes only "harm to [its] business interests" rather than "injury to competition in the market as a whole." *Les Shockley Racing*, 884 F.2d at 508. "The antitrust laws were enacted for 'the protection of **competition**, not **competitors**.'" *McGlinchy*, 845 F.2d at 811-12 (citation omitted). And KME "may not merely recite the bare legal conclusion that competition has been restrained unreasonably," *Les Shockley Racing*, 884 F.2d at 508, nor can it simply "dress[] [the facts] up in the language of antitrust," *Rutman Wine*, 829 F.2d at 736. And there can be no antitrust injury unless the alleged "loss stems from a **competition-reducing** aspect or effect of the defendant's behavior," *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990), but as explained above, the Complaint alleges only procompetitive conduct. If anything, KME's alleged injury is the result of "**increased** competition in the market," which is simply not protected by the antitrust laws. *Datel*, 712 F. Supp. 2d at 991. KME's "failure to allege injury to competition" requires dismissal. *McGlinchy*, 845 F.2d at 813.

### C.     The Complaint Alleges No Facts Regarding GTT's Activities.

Even if the Complaint alleged anticompetitive conduct, the Complaint contains no factual allegations linking GTT to that conduct. In fact, large sections of the Complaint do not refer to GTT at all. (*E.g.*, Compl. ¶¶ 241-45.) The Complaint repeatedly declares—in conclusory fashion—that GTT "influenced and assisted" municipalities (*e.g.*, *id.* ¶¶ 50, 77, 141, 226), limited the "freedom of choice of agency officials" (*e.g.*, *id.* ¶¶ 54, 74, 143, 149, 161, 225), and otherwise "controlled" or "influenced" the conduct of others (*e.g.*, *id.* ¶¶ 223). But "[KME] does not actually plead facts to support these conclusory allegations," and KME "cannot turn otherwise permissible conduct into anticompetitive conduct, and thereby engineer an antitrust violation, simply by applying polemic labels." *Doron*, 423 F. Supp. 2d at 186-87. KME utterly fails to "'allege with at least some degree of particularity overt acts which [GTT] engaged in' which support [KME's] claim." *Belluomini v. Citigroup, Inc.*, 2013 WL 3855589, at *4 (N.D. Cal. July 24, 2013)

1   (quotation omitted).  These "naked assertion[s]" do not "allow[] the court to draw the reasonable

2   inference that [GTT] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This is an

3   independent basis for dismissing the Complaint.

### D.     The Complaint Does Not Allege an Antitrust Conspiracy.

5          Additionally, to state a claim under Section 1 of the Sherman Act, Section 3 of the Clayton

6   Act, and California's Cartwright Act, the Complaint must allege an antitrust conspiracy, or

7   "evidentiary facts which, if true, will prove . . . a contract, combination or conspiracy among two or

8   more persons or distinct business entities . . . by which the persons or entities intended to harm or

9   restrain trade or commerce." *Kendall*, 518 F.3d at 1047.  The Complaint cannot simply use words

10  like "conspiracy" or "agreement"—it must contain "a more specific allegation" such as "identifying

11  a written agreement" or "a basis for inferring a tacit agreement." *Id.*; *see also MedioStream*, 869 F.

12  Supp. 2d at 1104 (dismissing complaint that failed to allege "whether such agreements are written,

13  oral or tacit, when they were executed, who made the decisions, or with [whom] such agreements

14  were made").  KME's Complaint alleges no conspiracy, and "does not answer the basic questions:

15  who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048.  And to

16  the extent KME may point to agreements between GTT and its customers, "a purchaser is free to

17  choose the product he desires without rendering himself an antitrust conspirator," and "[i]t is

18  difficult to conceive how such a 'conspiracy' can effect a restraint of trade in the antitrust sense."

19  *Sec. Fire Door*, 484 F.2d at 1030.  These claims must be dismissed.[5]

## II.     THE ALLEGED CONDUCT IS IMMUNE UNDER *NOERR-PENNINGTON*.

21         Although convoluted, the thrust of the Complaint appears to be that GTT (through the

22  activities of others) engaged in conduct to influence city officials to purchase GTT's products.  (*See,*

23  *e.g.*, Compl. ¶¶ 5, 26, 291.)  But, as the Ninth Circuit has acknowledged, the *Noerr-Pennington*

24  doctrine unequivocally "protects efforts to influence officials making essentially commercial

25  decisions on behalf of a governmental entity," even "regardless of anticompetitive purpose." *In re*

---

[5] GTT also cannot "conspire" with its distributors, because they are not competitors and do not have "divergent economic interests." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034-35 (9th Cir. 2005); *accord Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1315-18 (8th Cir. 1986).

*Airport Car Rental*, 693 F.2d at 86-67.  And courts routinely "dismiss[] antitrust actions at the Rule 12(b)(6) stage based on *Noerr-Pennington*."  *Love Terminal Partners, LP v. City of Dall.*, 527 F. Supp. 2d 538, 549 (N.D. Tex. 2007) (collecting cases).

The *Noerr-Pennington* doctrine is based in part on "the first amendment right to petition the government."  *In re Airport Car Rental*, 693 F.2d at 86.  The "doctrine sweeps broadly and is implicated by both state and federal antitrust claims that allege anticompetitive activity in the form of lobbying or advocacy before any branch of either federal or state government."  *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998).[6]  Thus, there can be no antitrust violation "where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action."  *E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961).  Indeed, "the Sherman Act does not prohibit . . . attempt[s] to persuade" a governmental entity "to take a particular action . . . that would produce a restraint or a monopoly."  *Id.*  Because KME "allege[s] that [GTT] violated the [antitrust laws] in its dealings with the municipalities, those claims are subject to the *Noerr-Pennington* Doctrine."  *Asphalt Paving Sys., Inc. v. Asphalt Maint. Solutions, LLC*, 2013 WL 1292200, at *4 (E.D. Pa. Mar. 28, 2013).  GTT's conduct is immune, even if the municipalities included "name brand products" in their specifications, "refus[ed] to accept bids proposing use of alternative products which are equivalent in performance," or violated state competitive bidding statutes.  *Id.* at *5.

*Noerr-Pennington* immunizes conduct even when the actor's "sole purpose in seeking to influence" the governmental body is to "destroy" the competition.  *Noerr*, 365 U.S. at 138.  Indeed, "*Noerr* shields from the [antitrust laws] a concerted effort to influence public officials **regardless** of intent or purpose."  *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).  Even conduct deemed "unethical" is protected under the doctrine.  *Noerr*, 365 U.S. at 141. "Thus, Defendants are entitled to *Noerr-Pennington* protection even if they pressured government officials, lied to the government about the merits of [KME's products], or otherwise drew the [governmental] authorities

---

[6] The *Noerr-Pennington* doctrine also applies to unfair competition and Cartwright Act claims. *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 77 Cal. Rptr. 3d 695, 698 (Cal. Ct. App. 2008).

into their scheme as 'co-conspirators,' as long as their conduct was part of a good faith campaign aimed a[t] securing government action." *Doron*, 423 F. Supp. 2d at 189.  Even if GTT had deliberately deceived agency officials as part of some alleged "campaign of disinformation" (which did not occur), it is still entitled to *Noerr-Pennington* immunity because "deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned." *Noerr*, 365 U.S. at 145.

GTT's "lobbying efforts were genuinely aimed at procuring government action," such as obtaining "bid specifications tailored to [its product]" and securing contracts.  *Doron*, 423 F. Supp. 2d at 192.  *Noerr-Pennington* immunity applies and KME's claims must be dismissed.

### III.    KME AND MORGAN LACK STANDING TO BRING THESE CLAIMS.

The Complaint alleges no direct individual injury to Morgan, and absent such an injury, "the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation." *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 2012 WL 4857183, at *2 (3d Cir. Oct. 15, 2012); *Jones*, 836 F.2d at 736.  Further, it is apparent on the face of the Complaint that KME's injury is not "fairly traceable" to GTT's conduct, but is "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560; *see also In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. at 574 (restraint caused by "the [third-party] authorities' exercise of their statutory authority and duty to manage [the projects] in their charge"); *Stearns*, 170 F.3d at 524 ("[T]he decision to sole-source a contract or adopt a particular specification [is] always ultimately in the hands of the consumer.").  Thus, for the same reasons as described in Section I.C, the Complaint "fail[s] to show the requisite causal nexus" between GTT and the injury-causing activities, so KME "lack[s] Article III standing to sue" GTT.  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1129 (9th Cir. 2013).

### IV.    KME'S CLAIMS ARE BARRED UNDER *RES JUDICATA*.

Perhaps most fundamentally, KME is barred by *res judicata* because it already tried and lost these antitrust claims as part of the tortious interference claim that was raised in the Minnesota Litigation.  A plaintiff must "try his whole cause of action and his whole case at one time.  He cannot even split up his claim . . . and, a fortiori, he cannot divide the grounds of recovery." *United States v. California & Oregon Land Co.*, 192 U.S. 355, 358 (1904).  *Res judicata* prevents "the

10

relitigation of a claim on grounds that **were raised or could have been raised** in the prior action," *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990), "if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases," *Brekke*, 97 F.3d at 1047.[7]  All these requirements are met here.

    *The prior judgment was rendered by a court of competent jurisdiction.*  The District of Minnesota rendered the prior judgment regarding KME's tortious interference claim.  (Ex. 6 at 46.) It is undisputed that the District of Minnesota had jurisdiction over that claim.  At the time KME filed its complaint asserting its tortious interference claim against GTT, KME admitted that the District of Minnesota had both "subject matter jurisdiction over all claims asserted by KME" and "personal jurisdiction over GTT."  (Ex. 1 at 3.)

    *The decision was a final judgment on the merits.*  KME's characterization of its tortious interference claim changed over time, but the District of Minnesota ultimately found that the claim failed as a matter of law, regardless of how KME characterized it.  (*See* Ex. 6 at 46.)

    When KME filed its complaint in the Minnesota Litigation, it pled that the tortious interference claim was based on (1) a video, (2) a newsletter, (3) a press release, and (4) alleged statements regarding winning the patent infringement lawsuit.  (Ex. 1 at 22-25.)  During the course of discovery, KME injected into the Minnesota Litigation the very antitrust allegations that are at issue in the instant case as the basis for the tortious interference claim.  Indeed, KME hired an expert, Dean Thomson, to provide an expert report (the "Thomson Report") that opined whether GTT's alleged conduct violated state and federal antitrust laws.  GTT objected to these antitrust claims as improper for not having been pled and informed KME that it must file a motion for leave to amend its complaint.  (Ex. 3 at 2-3.)  KME chose not to do so.

    GTT therefore moved for summary judgment on the tortious interference claim—on the grounds as originally pled.  (Civ. No. 10-4110, Dkt. No. 128 (under seal).)  GTT also moved for judgment on the pleadings under Rule 12(c), arguing that the tortious interference claim—based on

---

[7] "The law of the forum that rendered the first judgment controls the res judicata analysis."  *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (quotation omitted).

1   the antitrust claims—failed to state a claim upon which relief can be granted.  (*Id.* at 20, Dkt. No.

2   126.)  At the summary judgment hearing, KME argued that Mr. Thomson's "opinions about the

3   antitrust law, various principles of procurement, transparency, [and] fair bidding" establish the

4   "wrongfulness" prong for KME's tortious interference claim, and these bases were "timely"

5   because "**there was an existing claim**, it was within the discovery period, and it **bolstered what we**

6   **pled initially**.  We think **that's enough**."  (Ex. 5 at 21:4-7, 18-20, *see also id.* at 19:17-24.)[8]

7        The District of Minnesota found that "KME's broad allegation in the Complaint is not

8   sufficient by itself," and KME's allegations regarding GTT "submitting an application for federal

9   grant money and crafting bidding specifications" were "new unpled allegations."  (Ex. 6 at 40-41.)

10  As a result, the court granted GTT's motions for summary judgment.  (*Id.* at 46.)  The court also

11  granted GTT's motion for judgment on the pleadings.  (*Id.*)  GTT's patent infringement claims

12  proceeded to an eight-day jury trial.  The jury found that KME willfully infringed GTT's patent and

13  awarded damages exceeding $5 million (Ex. 8), which was later enhanced by the district court (*id.*).

14  KME filed an appeal with the Federal Circuit, but did not appeal any grounds relating to its failed

15  tortious interference claim.

16        ***The same parties or their privies were involved in both cases.***  It is undisputed that KME,

17  Morgan, and GTT were involved in both the Minnesota Litigation and this case.

18        ***The same cause of action was involved in both cases.***  "[I]f a case arises out of the same

19  nucleus of operative fact, or is based upon the same factual predicate, as a former action, the two

20  cases are really the same claim or cause of action for purposes of res judicata."  *Hufsmith v. Weaver*,

21  817 F.2d 455, 461 (8th Cir. 1987) (citations and quotations omitted).  In addition, "the claim

22  extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all

23  or any part of the transaction, or series of connected transactions, out of which the action arose."

24  *Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th

25

26  [8] KME made even stronger arguments along these lines in its sealed response brief (*see* Civ. No. 10-
    4110, Dkts. 163, 174 (under seal)), but KME has refused to allow GTT to provide that brief or the
    Thomson Report to this Court.  In fact, KME's counsel hung up on GTT's counsel during a meet-
27  and-confer after refusing to answer whether or not those documents contained information
    confidential to KME.  GTT has therefore filed a motion with the District of Minnesota in order to
28  provide those documents to this Court.  (Frank Decl. ¶ 2.)  The motion is now pending.  (Ex. 9.)

Cir. 2004).

The factual predicate of KME's tortious interference claim in the Minnesota Litigation is the same as the factual predicate of KME's antitrust claims in this case for numerous reasons.  First, the Specification and Misinformation Schemes are the thrust of KME's Complaint in this case and were clearly the factual predicates underlying KME's tortious interference claim in the Minnesota Litigation, as shown by the comparison below of KME's discovery contentions in the Minnesota Litigation with the Complaint here.

| KME's Claims Are the Same | | |
|---|---|---|
| **Scheme** | **Tortious Interference Claim (D. Minn.)** | **Antitrust Claims (N.D. Cal.)** |
| **Specification** | "the City relied upon **specifications sent by GTT**" and the "specifications were drafted in such a way that **only GTT could meet the specifications**" thereby "creating a **sole sourcing** Project" (Ex. 2 at 15)<br><br>"drafting or helping to **draft specifications** for labor and materials requiring . . . **components supplied only by GTT** that are either outdated . . . or no longer available" (Ex. 4 at 11) | GTT "**persuaded agencies to incorporate components** of the Opticom product produced by GTT in such a way as to exclude the Emtrac Systems product," (*e.g.*, Compl. ¶ 291), by engaging in a "**sole source scheme** in which it encouraged and aided public agencies to **draft specifications** for GTT's obsolete optical product" (*e.g.*, *id.* ¶ 4) |
| **Misinformation** | "GTT has made **false and misleading statements** of material fact to city officials . . . **regarding GTT products, KME products**, and the system components and capabilities of each" (*E.g.*, Ex. 4 at 11; Ex. 2 at 15) | "campaign of **disinformation concerning** the quality of **KME's equipment** and/or the features of **GTT's equipment**"  (*E.g.*, Compl. ¶ 5) |

To the extent that KME now contends that GTT engaged in other anticompetitive activities, such as assisting with grant writing (Compl. ¶ 5), or reducing its bid price in response to a competitive bid (*id.*), those were also factual predicates underlying KME's tortious interference claim because they relate to the same bidding process.  In fact, the Minnesota court actually found that KME was attempting to support its tortious interference claim with evidence that cities were "working with GTT on submitting an application for federal grant money."  (Ex. 6 at 40.)

Moreover, both types of activity would fall under KME's prior interrogatory response stating that "GTT has improperly influenced city officials in connection with public projects." (Ex. 4 at 10.)

Second, KME developed these facts during the Minnesota Litigation. These schemes drove its discovery efforts in the Minnesota Litigation, despite the fact KME chose not to amend its complaint in the Minnesota Litigation to explicitly plead the Specification and Misinformation Schemes. For example, KME deposed John Keister, representative for the City of West Carrollton, OH, and asked him if "the technical information in this specification came from GTT." (Ex. 7 at 30:9-12.) KME also asked Mr. Keister whether he talked to a GTT sales representative "about the cost of the system they expected to install . . .[a]nd therefore how much money you would need in terms of a grant." (*Id.* at 40:22-41:3.) In addition, KME deposed multiple other third-party witnesses, including representatives from the Cities of Anaheim and St. Paul regarding their bidding processes. KME cited these depositions in its response to GTT's Interrogatory No. 34 as providing the factual basis for KME's tortious interference claim. (*See* Ex. 4.)

Third, not only did KME develop these facts, it actually hired and submitted an expert report regarding them. The Thomson Report clearly addressed each antitrust theory KME now raises in the instant dispute. KME's counsel refused to let GTT show the report itself to the Court, but the ultimate, non-confidential opinions from the Thomson Report are publicly available and were discussed during a public hearing. (Exs. 6 at 15-17, 19-20.) In fact, KME's own counsel publicly explained that Thomson opined that GTT's bidding activities violated "the Sherman Act and the Antitrust Act," (*Id.* at 19):

- "**His opinions** cover a number of different topics, including **antitrust laws**, **procurement laws**, and most importantly, principles of transparency and **competitive bidding**." (*Id.* at 17.)

- "[GTT] did some things with respect to Anaheim and St. Paul and West Carrollton. Not only were those acts wrongful, but according to Mr. Thomson, they **violated the statutes**." (*Id.* at 19.)

- "**It's true** that he has **offered opinions** about the **antitrust law**, various principles of procurement, transparency, [and] **fair bidding** . . . ." (*Id.* at 20.)

As a result, the antitrust claims that are raised in this case are not only "based upon the same factual predicate, as a former action," they were actually asserted in the Minnesota Litigation, and, therefore constitute "the same claim or cause of action for purposes of res judicata." *Hufsmith*, 817

F.2d at 461.  For these reasons, *res judicata* bars KME's antitrust claims in this case.

KME cannot escape this fate.  For example, it is irrelevant that KME labeled its claim a "tortious interference" claim in the Minnesota Litigation and an "antitrust" claim here.  "[I]f the cause of action is the same, the principle of res judicata prevents our reaching that question, not because it was actually decided in (the first action), but because the judgment is a final determination of not only what was actually in issue but what **might have been in issue** had it been raised."  *Engelhardt v. Bell & Howell Co.*, 327 F.2d 30, at 36 (8th Cir. 1964).  It is also immaterial that the current Complaint includes additional examples of cities in which GTT engaged in allegedly anticompetitive behavior.  KME was clear that its tortious interference claim was based on bidding-related activities that were not limited to only the cities discussed in the Minnesota Litigation.  (Ex. 4 at 10-11 ("including without limitation" the cities of Anaheim, CA, West Carrollton, OH, and St. Paul, MN).)  And "'[w]hen a defendant is accused of successively but nearly simultaneous acts, or **acts which though occurring over a period of time were substantially of the same sort and similarly motivated**, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action.'"  *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338 (Fed. Cir. 1999) (quoting Restatement (Second) of Judgments § 24 cmt. D) (emphasis in original).  "[KME]'s allegations, upon which it premised its claims in the two cases were clearly 'of the same sort and similarly motivated,' if not identical, although they were presented to establish two different causes of action."  *Id.*

Finally, KME is barred even though its antitrust claims may have been "unpled" in the Minnesota Litigation.  (Ex. 6 at 40).  "[E]ven [though] [KME] had not attempted to amend its . . . Complaint in the [Minnesota] Action, the Eighth Circuit adheres to the principle 'that res judicata bars all claims that **could have been advanced** in support of a previously adjudicated cause of action.'"  *Crystal Imp. Corp. v. AVID Identification Sys. Inc.*, 582 F. Supp. 2d 1166, 1171 (D. Minn. 2008) (citing *Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826-27 (8th Cir.1989)).

## <u>CONCLUSION</u>

GTT respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:  December 23, 2014

FAEGRE BAKER DANIELS LLP


By:  /s/ *Lauren J. Frank*

Calvin L. Litsey (CSB 289659)
Helen E. Chacon (CSB 293067)
FAEGRE BAKER DANIELS LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303
Telephone:  (650) 324-6700
Fax:  (650) 324-6701
Email:  calvin.litsey@FaegreBD.com
Email:  helen.chacon@FaegreBD.com

James W. Poradek (*pro hac vice*)
Chad Drown (*pro hac vice*)
Lauren J. Frank (*pro hac vice*)
Emily E. Chow (*pro hac vice*)
Eva B. Stensvad (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402
Telephone:  (612) 766-8800
Fax:  (612) 766-1600
Email:  james.poradek@FaegreBD.com
Email:  chad.drown@FaegreBD.com
Email:  lauren.frank@FaegreBD.com
Email:  emily.chow@FaegreBD.com
Email:  eva.stensvad@FaegreBD.com

Attorneys for Defendants Global Traffic
Technologies, LLC and Global Traffic
Technologies, Inc.

US.55402950.05

DEFENDANTS' MOTION TO DISMISS Case No. 3:14-cv-04906-VC