1    Jana Yocom (ARDC# 6193677)
2    Jana Yocom, P.C.
3    320 S. 11th, Suite 1
4    Mt. Vernon, Illinois 62864
5    Telephone:  618-731-1944
6    Jana.yocom@gmail.com
7    Counsel for Plaintiffs,
8    KM Enterprises, Inc. and Rodney
9    Kris Morgan
10   *Pro hac vice* application pending
11
12   Martin Zurada (SBN 218235)
13   *Zurada Law Group*
14   785 Market Street, 16th Floor
15   San Francisco, CA 94103
16   mzurada@hotmail.com
17   Telephone:  415-637-8483
18   Local Counsel for Plaintiffs
19
20                **UNITED STATES DISTRICT COURT FOR THE**
21                **NORTHERN DISTRICT OF CALIFORNIA**
22                **SAN FRANCISCO BRANCH**
23
24   KM Enterprises, Inc., an Illinois           )
25   corporation, and Rodney Kris Morgan,        )
26                                               )
27               Plaintiffs,                     )        CASE NO.: 3:14-cv-04906
28                                               )
29   v.                                          )
30                                               )        Date: February 5, 2015
31   Global Traffic Technologies, LLC, a Delaware )       Time: 10 am
32   limited liability company; Global Traffic    )       Courtroom: 4-17th Floor
33   Technologies, Inc., a Delaware corporation,  )       Judge: Hon. Vince Chhabria
34                                               )
35               Defendants.                     )
36
37
38
39
40
41

1
**TABLE OF CONTENTS**

2    ARGUMENT ...................................................................................................................1

3       A.  Anticompetitive conduct is clear ................................................................1
4
5       B.  Antitrust injury as a function of standing is sufficiently alleged .......................................8
6
7       C.  Noerr-Pennington provides no protection here ....................................................9

8       D.  This case is not barred by res judicata; Defendants' argument is
9           judicially estopped even so ........................................................................14
10

11   CONCLUSION..................................................................................................................15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF AUTHORITIES

## Cases

*Affiliated Capital Corp., v. City of Houston,*
735 F.2d 1555 (5th Cir. 1984) ...................................................................................12

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
948 F.2d 536 (9th Cir. 1991) ......................................................................................1

*Albrecht v. Herald Co.,*
390 U.S. 145 (1968) ..................................................................................................22

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,*
190 F.3d 1051 (9th Cir. 1999) ....................................................................................8

*Aspen Skiing Co. v. Aspen Highlands,*
472 U.S. 585 (1985) ....................................................................................................1

*Atlantic Richfield Company v. USA Petroleum Company,*
495 U.S. 328, 336 (1990) ............................................................................................9

*Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209, 113 S.Ct. 2578 (1993) .........................................................................6

*California Motor Transport Co. v. Trucking Unlimited,*
404 U.S 508 (1972) ..........................................................................................9, 10, 11

*Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.,*
690 F.2d 1240 (9th Cir. 1982) .........................................................................5, 7, 13

*Community Communications Co. v. City of Boulder,*
455 U.S. 40 (1982) ....................................................................................................12

*Duke & Co. Forester,*
521 F.2d 1277 (3rd Cir. 1975) ..................................................................................12

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ..................................................................................................10

*F.T.C. v. Phoebe Putney Health System, Inc.,*
133 S.Ct. 1003 (2013) ...............................................................................................12

*George R. Whitten, Jr. v. Paddock Pool Builders, Inc.,*
424 F.2d 25, 33 (1st Cir. 1970) .................................................................................12

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
343 F.3d 1000, 1008 (9th Cir. 2003) .................................................................8

*Harkins Amusement Enterprises, Inc. v. General Cinema Corp.,*
850 F.2d 477 (9th Cir. 1988) ...........................................................................1

*Harmon v. Valley National Bank,*
339 F.2d 564, 566 (9th Cir. 1964) ...............................................................5, 13

*Hecht v. Pro-Football, Inc.,*
444 F.2d 931 (D.C.Cir. 1971) ........................................................................12

*Indian Head, Inc. v. Allied Tube & Conduit Corp.,*
817 F.2d 938, 947 (2nd Cir. 1987),
*affirmed, Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988)....................................................................5, 7, 10, 11, 13

*In re Airport Car Rental Antitrust Litigation,*
521 F.Supp. 568 (N.D.Cal. 1981), *aff'd* 693 F.2d 84 (9th Cir. 1982),
*cert denied,* 462 U.S. 1133 (1983) ..................................................................9

*In re IBP Confidential Business Documents Litigation,*
755 F.2d 1300, 1313 (8th Cir. 1985) ..............................................................22

*In re Insurance Antitrust Litigation,*
938 F.2d 919 (9th Cir. 1991), *rev'd in part, aff'd in part,*
*Hartford Fire Ins. Co. v. California,*
509 U.S. 764 (1993)........................................................................................8

*KM Enterprises, Inc. v. Global Traffic Techn., et al,* 12-cv-257 (S.D.Ill.)...................................14

*KM Enterprises, Inc. v. Global Traffic Technologies, Inc., et al,*
725 F.3d 718 (7th Cir. 2013) .........................................................................22

*Mark Aero, Inc. v. Trans World Airlines, Inc.,*
580 F.2d 288, 296-98 (8TH Cir. 1978).............................................................12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)........................................................................................5

*Oakland-Alameda County Builders' Exchange v.F.P. Lathrop Construction Company,*
4 Cal.3d 354 (1971) .......................................................................................3

*Rissetto v. Plumbers and Steamfitters Local 343,*
94 F.3d 597 (9th Cir. 1996) ...........................................................................15

*Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council,*
851 F.2d 1208 (9th Cir. 1988) ...................................................................................15

*Russell v. Rolfs,*
893 F.2d 1033 (9th Cir. 1990) ...................................................................................15

*Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Teamsters & Helpers Local 150,*
440 F.2d 1096, 1099 (9th Cir. 1971) .........................................................................12

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,*
401 F.3d 123 (3rd Cir. 2005) .......................................................................................4

*Security Fire Door Company v. County of Los Angeles,*
484 F.2d 1028 (9th Cir. 1973) ...........................................................................4, 6, 7

*Sessions Tank Liners, Inc. v. Ison Mfg, Inc.,*
827 F.2d 458, 466 (9th Cir. 1987), *overruled,* 487 U.S. 1213 (1988) ..................5, 13

*Somer v. Apple, Inc.,*
729 F.3d 953, 963 (9th Cir. 2013) ..............................................................................22

*Stearns Airport Equipment Co. v. FMC Corp.,*
 170 F.3d 518 (5th Cir. 1999) ...............................................................2, 3, 4, 5, 6, 7

*Superior Court Trial Lawyers Ass'n v. F.T.C.,*
856 F.2d 226 (D.C.Cir. 1988) ....................................................................................12

*United States v. Grinnell Corp.,*
 384 U.S. 593 (1966) .....................................................................................................2

*United States v. Gasoline Retailers Association, Inc.,*
 258 F.2d 688 (7th Cir. 1961) .......................................................................................2

**Secondary Authority**

Joseph C. Gallo, *et al,* "Criminal Penalties under the Sherman Act: A Study of Law and
Economics," 16 Research in Law & Economics 25 (1994)...........................................1

**ISSUES TO BE DECIDED**

1. Does the Complaint sufficiently allege anticompetitive conduct?

2. Does the Complaint sufficiently allege antitrust injury as a function of standing as to KM Enterprises, Inc. and Kris Morgan, individually?

3. Does the *Noerr Pennington* doctrine exempt Defendants' activity from liability?

4. Is the antitrust claim barred by *res judicata?*

1     **ARGUMENT**
2
3     Pursuant to Federal Rule of Civil Procedure 12, KM Enterprises, Inc. and Kris Morgan

4     (collectively, "KME") file this Response to Motion to Dismiss as follows:

5          *A.  Anticompetitive conduct is clear.*

6     Global Traffic Technologies ("GTT") argues that KME's complaint fails to allege anti-

7     competitive conduct. Citing precedent addressing competitive bidding violations alone, GTT

8     frames its behavior as jockeying over specifications and bidding procedures, disinformation that

9     did not go beyond "competition on the merits," and coercive measures that are "pro-

10    competitive." It cites precedent that held that competitive bidding violations, alone, do not

11    violate the antitrust laws. In this case the bidding behavior went beyond simple statutory

12    violations.

13    For instance, monopoly leveraging, which alone may not constitute a Sherman Act violation

14    violates the Act when predatory conduct is alleged. *Alaska Airlines, Inc. v. United Airlines, Inc.,*

15    948 F.2d 536, 548 (9th Cir. 1991), *citing Aspen Skiing Co. v. Aspen Highlands,* 472 U.S. 585

16    (1985); *United States v. Grinnell Corp.,* 384 U.S. 593 (1966). In this case, GTT touted

17    specifications for an obsolete product for which patent protection had long expired and then

18    replaced the product, after the contract was awarded, with its dual technology that

19    simultaneously met the specifications, but also competed with KME's GPS product. Such

20    conduct goes beyond allowable competition.

21    Bid-rigging is a restrictive agreement among competitors and is a form of horizontal price

22    fixing. *See generally* Joseph C. Gallo, *et al,* "Criminal Penalties under the Sherman Act: A Study

23    of Law and Economics," 16 Research in Law & Economics 25 (1994). Bid rigging has been

24    termed to include interference with the integrity of a competitive bidding system. *Harkins*

1    *Amusement Enterprises, Inc. v. General Cinema Corp.,* 850 F.2d 477, 487 (9th Cir. 1988) (Case

2    involved an agreement to exclude a competitor from bidding—similar to bid rotation.) In any

3    case the conduct at issue in this case, although not a classic bid rotation scheme, involved

4    elements of price fixing and refusal to deal. The question to be determined on the issue of anti-

5    competitive conduct is whether the conduct went beyond competition on the merits.

6        In *Oakland-Alameda*, participants in a Bid Depository imposed a rule of silence held to have

7    stifled open price competition; the court was unimpressed with the excuse of preventing the

8    competitive evil of 'bid peddling.' *Oakland-Alameda County Builders' Exchange v.F.P. Lathrop*

9    *Construction Company,* 4 Cal.3d 354, 364 (1971). In that case, a bid depository arrangement

10   obligated contractors to take the low bid from the depository. The court held that the agreement

11   between the subcontractors who deposit bids and the general contractors who elect to receive

12   bids from the bid depository was illegal *per se* because it fixed the price at which the services

13   and materials were to be furnished to the general contractor and perforce to the awarding

14   authority. *Id.* Rules implementing the Depository were *per se* unlawful under principles of price

15   fixing and boycott, or refusal to deal. *Id.* at 365; *see also United States v. Gasoline Retailers*

16   *Association, Inc.,* 258 F.2d 688 (7th Cir. 1961)(an agreement among gas station operators not to

17   advertise their retail prices for gasoline was invalidated as a price-fixing conspiracy, despite

18   alleged justification to prevent gas wars).

19       After years of trying to compete within the bounds of the federal and state competitive

20   bidding laws, KME realized that GTT's strategy in concert with distributors, consultants and

21   contractors was to implement the four part strategy at issue in *Stearns Airport Equipment Co. v.*

22   *FMC Corp.,* 170 F.3d 518 (5th Cir. 1999).  In *Stearns,* the defendants "FMC" used four strategies

23   in pursuing sales to municipalities. First, FMC was to attempt to convince municipalities that

1    they should avoid competitive bidding and strike a purchase agreement with FMC directly—so

2    called "sole sourcing." Second, if bidding appeared inevitable, FMC should strive to drive the

3    criteria for the award away from price alone by requesting various product features be weighted

4    against cost in the final bid. Third, efforts were to be made to insure that the specifications

5    adopted by the municipality were tailored to fit FMC's product and exclude FMC's competitor.

6    Lastly, FMC would induce complexities in the bidding process: by suggesting certain

7    certifications and restrictions be added that worked to the detriment of FMC's competitor. The

8    last strategy was functionally identical to the specification effort. In both categories, FMC

9    attempted to get certain features it possessed and its competitor did not –such as electromagnetic

10   design, certification from an outside body, or a direct legal responsibility for the product-

11   incorporated in the specifications. The *Stearns* plaintiff alleged that the four strategies

12   constituted a deliberate plan to exclude the plaintiff from competing in the municipal bridge

13   market, thus harming consumers by robbing them of a true competitive process.

14          In *Stearns,* the four strategies at issue involved FMC's attempts to persuade buyers to

15   favor its product prior to the actual bid. *Id.* at 522. Courts have addressed comparable efforts to

16   convince independent government purchasers to adopt specifications in their favor prior to

17   bidding. *Id.* Those courts have uniformly found such behavior not to be a violation, apparently

18   providing the basis of GTT's actions in the case at bar. GTT has gone beyond the validated

19   conduct in those cases, successfully tampering with the competitive bidding process in a way

20   that amounts to unlawful restraint of trade.

21          The *Stearns* court, addressing the case at the summary judgment stage, identified reasons

22   why the competitors' conduct did not go beyond "trying to sell its product." First, *Stearns*

23   distinguished that case from *Aspen Skiing* and *Great Western,* in terms of business justification.

1    In this case, evidence will show that although the Brookhaven bid price was alleged to be

2    lowered by GTT after the sealed bids were revealed, the entire grant amount of $3 million,

3    known in advance by GTT, was recouped. Also, the Monterey lower bid price given by GTT's

4    distributor was recouped in a previous solicitation which buried queue jump components of the

5    GTT product which were not required by the KME product.

6         *Stearns* addressed a second distinguishing feature—active approval of the consumer. In

7    *Stearns,* the choice of product by the municipal consumer took the activity out of the antitrust

8    context; an antitrust monopolist unilaterally excludes the competition. *Stearns,* 170 F.3d at 524.

9    Here the consumers include the Federal Highway Administration, the Federal Transit

10   Administration and state departments of transportation. As set forth in the Complaint, permission

11   to sole source must be specifically provided by the federal division administrator; California

12   Department of Transportation rules governing applicable transportation procurement

13   affirmatively defer to federal law. Thus the consumer is not the municipality under the scheme

14   set forth by Congress.

15        *Stearns* also excused wrong, misleading and debatable disinformation as allowable

16   competition on the merits. *Id.* at 524. *Stearns* draws the line, however, where the respondent's

17   sole sourcing behavior amounts to asking the municipality to hurt its competitor. *Id.* at 525.

18   GTT excuses its "wrong, misleading and debatable statements" as allowable competition on the

19   merits. *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,* 401 F.3d 123 (3rd Cir.

20   2005), cited by GTT, does not support its activity. There the court stated: "The government

21   officials making the decision to specify materials were disinterested, conducted their own fire

22   safety tests before making decisions, and were susceptible to lobbying from all competitors in

23   the toilet partition industry." *Id.* at 134-35. Here, as the Complaint makes clear, KME was

1    excluded from pre-bidding participation. Moreover, this Complaint was filed in order to meet the

2    statute of limitations on KME's patent misuse claim, although the district court jury verdict of

3    patent infringement is pending on appeal. Such a claim alleges viable anticompetitive conduct.

4        The remedy suggested by *Stearns,* that the competitor increase sales efforts on future projects,

5    has been performed by KME and those efforts are set forth in the Complaint. In this case, the

6    non-price considerations, such as reliability, maintenance support, quality of the product are

7    being obscured at the pre-bid stage by GTT rather than clarified. The procedures set forth in the

8    regulations, if followed, are designed to allow best value and product testing and are being

9    thwarted by GTT's non-compliance, making the information unavailable to the ultimate

10   consumer. *See Stearns,* 170 F.3d at 525. KME is not free to engage in identical tactics if it

11   chooses to obey federal and state law. *Cf. Stearns,* 170 F.3d at 525; *Security Fire Door Company*

12   *v. County of Los Angeles*, 484 F.2d 1028, 1030 (9th Cir. 1973). Whether GTT exhibits superior

13   product or business acumen which resulted in the award of the contracts at issue here cannot be

14   decided on this motion to dismiss.

15       In this case the Complaint alleges that the integrity of the decisional process has been

16   violated. *See, e.g., Indian Head, Inc. v. Allied Tube & Conduit Corp.,* 817 F.2d 947 (2d Cir.

17   1987). The Complaint alleges facts, which if proven with tend to disprove the assumption of

18   independent action. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

19   106 S.Ct. 1348, 1356-57 (1986). In this case, wrongdoing is not alleged against the

20   municipalities and any such improper conduct that may exist cannot shield GTT from liability

21   for antitrust conspiracy. *See Sessions Tank Liners, Inc. v. Ison Mfg., Inc.,* 827 F.2d 458, 466 (9th

22   Cir. 1987), *overruled,* 487 U.S. 1213 (1988); *Clipper Express v. Rocky Mountain Motor Tariff*

23   *Bureau, Inc.,* 690 F.2d 1240, 1252 n. 17 (9th Cir. 1982); *Harmon v. Valley National Bank,* 339

1    F.2d 564, 566 (9th Cir. 1964). Additionally, facts alleged include actions in concert with

2    distributors of its product, bidding contractors and distributors of complimentary products.

3    Conspiracy is sufficiently alleged.

4        The *Stearns* court also took into consideration the extent and duration of the alleged

5    predation and the parties' relative strength. *Stearns,* 170 F.3d at 529, *citing Brooke Group, Ltd. v.*

6    *Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 113 S.Ct. 2578, 2590 (1993). *Stearns*

7    involved 5 bids over four years, in a market where 240-400 such chances were available during

8    the alleged predation. *Stearns,* 170 F.3d at 529. In this case, KME alleges more than four years

9    duration and nearly 100% exclusion in the United States market in addition to other valid claims.

10   The plaintiffs in *Stearns* also did not complaint to authorities about the bidding violations, as did

11   KME. *Id.* at 525, n.5.

12       The Ninth Circuit, presented with a claim that a monopolist's contacts with county

13   officials and architects led to the specification of its product prior to a bid, rejected the

14   contention that such contacts violated the Sherman Act. *Security Fire Door,* 484 F.2d at 1030-31.

15   The *Security Fire Door* court found that there had been no injury to competition through those

16   contacts since the competitor was free to engage in similar persuasive efforts with the relevant

17   officials. Competition on the merits was assured as long as the plaintiff had been "free to tout the

18   virtues of his particular [product] in an effort to secure favorable specs." *Id.* at 1031. *Security*

19   *Fire Door* does not support the Competitors' actions in this case, however, because the statute

20   and regulations applicable to transit and highway projects forbid proprietary specs, unless

21   specific federal standards are met and State sole source justification is documented. Those

22   standards prevent law-abiding contractors, such as KME from persuading municipalities prior to

23   the bid in a way that manipulates the results of the State-endorsed federal process.

1    Thus, jockeying over specs and bid procedures, prior to the bid process, has been held to

2    be a valid form of competition. Such behavior has been deemed "simple salesmanship" that

3    enhanced rather than subverted competition on the merits. *See Stearns,* 170 F.3d at 526 ("If

4    Stearns was "excluded," it was excluded by FMC's superior product or business acumen.") Such

5    is not the case, where there is evidence that the municipality consumer's agents had been co-

6    opted by the monopolist to a degree that it could be inferred they were not acting in what they

7    thought was the best interest of the municipality as respects the particular decision being made.

8    *Id.* at 526. Several cases have found violations of Section 2 when a monopolist engaged in what

9    appeared to be normal competitive behavior, but had manipulated representatives of the

10   consumer to the point that the integrity of the decisional process was violated. *See, e.g., Indian*

11   *Head, Inc. v. Allied Tube & Conduit Corp.,* 817 F.2d 938, 947 (2nd Cir. 1987), *affirmed, Allied*

12   *Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492 (1988) (manufacturer of traditional

13   metal pipe paid for the enrollment of hundreds of interested individuals in order to "pack" a vote

14   of a building association on whether to approve specifications for PVC pipe),

15   In the Complaint allegations involving the City of Monterey, this case the result of the

16   bidding was a predatorily low price, which was below cost, by excluding the cost of the queue

17   jump insertions and the software installation. The competitors had assurance of recouping the

18   below-cost amount as the money was imbedded in the previous solicitation. The independence of

19   Monterey Salina Transit's judgment was tainted by the competitors' conduct, whose

20   machinations resulted in the low bid. The municipality representatives were manipulated to the

21   point that the integrity of the decisional process was violated. *See Indian Head, Inc. v. Allied*

22   *Tube and Conduit Corp,* 466 U.S. 492 (1988).

23       *B.  Antitrust injury as a function of standing is sufficiently alleged.*

8

1    GTT alleges that KME's fails to allege loss stemming from a competition-reducing aspect or

2    effect of GTT's behavior, coloring its conduct as "procompetitive." The Ninth Circuit has

3    adopted the four factors set forth by the United States Supreme Court to define antitrust injury.

4    *Somer v. Apple, Inc.,* 729 F.3d 953, 963 (9th Cir. 2013), citing *Am. Ad Mgmt., Inc. v. Gen. Tel.*

5    *Co. of Cal.,* 190 F.3d 1051, 1055 (9th Cir. 1999); *accord Glen Holly Entm't, Inc. v. Tektronix,*

6    *Inc.,* 343 F.3d 1000, 1008 (9th Cir. 2003). As such, antitrust injury consists of four elements: "(1)

7    unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the

8    conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.*

9    As discussed above, GTT's conduct in "decreasing prices" did not increase competition

10   because the inflated price was inappropriately recouped apart from the lawful process. In

11   Brookhaven, the full amount of the $3 million grant, which was written by GTT, was initially bid

12   by GTT. The initial bid was reduced after the sealed bids were opened by $1.2 million.

13   Information later surfaced that the entire amount of the grant was spent toward the project. The

14   Complaint sufficiently alleges that the reduced bid on that solicitation was not an actual price

15   reduction and was aimed at excluding KME. Additionally, the lower price in Monterey was

16   recouped in a prior solicitation which paid for queue jump components that were necessary for

17   the GTT product but were not required for KME functionality. Otherwise, the contracts awarded

18   to GTT ignored KME's lower bid or excluded KME from the bidding process.

19   Antitrust injury is a function of standing and involves five additional factors, which are

20   clearly set forth in the Complaint. *See In re Insurance Antitrust Litigation,* 938 F.2d 919, 926 (9th

21   Cir. 1991), *rev'd in part, aff'd in part, Hartford Fire Ins. Co. v. California,* 509 U.S. 764 (1993).

22   First, the Complaint alleges GTTs intention to restrict KME's ability to compete. Second, direct

23   injury is alleged as GTT placed the bids at issue in several of the instances. In particular, GTT

1    was the bidder on Brookhaven, and GTT was in communication with Hinck regarding its request

2    to provide a lower bid. Also, GTT's practice was to place bids in parallel with its distributors

3    with the higher of the two bids taking the job. The Complaint sufficiently alleges GTT's control

4    over its distributors and case law prevents GTT from shielding itself in this regard. *See Atlantic*

5    *Richfield Company v. USA Petroleum Company,* 495 U.S. 328, 336 (1990), *quoting Albrecht v.*

6    *Herald Co.,* 390 U.S. 145, 153 (1968)("The Court found that 'the combination formed by the

7    [publisher] in this case to force [the distributor] to maintain a specified price for the resale of

8    newspapers which he had purchased from [the publisher] constituted, without more, an illegal

9    restraint of trade under §1 of the Sherman Act.'"). Third, the character of the damages is higher

10   prices to the consumer, diminution of choice of product available and hindrance of access to

11   advanced technology. Fourth, KME and Morgan are the appropriate plaintiffs and there are no

12   more appropriate plaintiffs available. Fifth, KME is a competitor in the industry. Morgan is

13   included as a plaintiff because he is personally subject to an $8.5 million judgment that is

14   pending on appeal. In the case below, Morgan's liability was based on alleged involvement as

15   director of a dissolved corporation, which was dismissed as a defendant. On appeal, GTT is

16   alleging that Morgan is otherwise personally liable for willful patent infringement. If Morgan is

17   successful on appeal, his involvement as a plaintiff may not be necessary. All five factors

18   support standing of both KME and Morgan and thus, sufficiently allege antitrust injury.

19          *C.   Noerr-Pennington provides no protection here.*

20          The Ninth Circuit, in a case cited by Defendants, has confirmed its adherence to the

21   limitations to the *Noerr-Pennington* doctrine set forth in *California Motor Transport Co. v.*

22   *Trucking Unlimited,* 404 U.S 508 (1972); *see In re Airport Car Rental Antitrust Litigation,* 521

23   F.Supp. 568, 576 (9th Cir. 1981). GTT suggests that KME is serial litigator. Instead, GTT is a

1   serial violator. As such, its expression is not protected. Under *California Motor Transport,* a

2   pattern of inappropriate petitions crosses a line that amounts to an abuse of the processes that

3   produces an illegal result. *California Motor Transport,* 404 U.S. at 513. Expressions that cross

4   that line fall within the sham exception to the *Noerr Pennington* doctrine. As stated by the

5   dissent in that case:

6         Under these allegations, liberally construed, the respondents are entitled to
7         prove that the real intent of the conspirators was not to invoke the processes
8         of the administrative agencies and courts, but to discourage and ultimately
9         to prevent the respondents from invoking these processes. Such an intent
10        would make the conspiracy 'an attempt to interfere directly with the
11        business relationships of a competitor and the application of the Sherman
12        Act would be justified.'
13
14  *Id.* at 518, *citing Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S.

15  127 (1961).

16         The validity of efforts to petition the government and thus the applicability of the *Noerr*

17  immunity, varies with the context and nature of the activity. *Allied Tube,* 456 U.S. at 499. For

18  instance, a publicity campaign directed at the general public, seeking legislation or executive

19  action, enjoys antitrust immunity even when the campaign employs unethical or deceptive

20  methods. *Noerr,* 365 U.S. at 140-41. But in less political arenas, unethical and deceptive

21  practices can constitute abuses of administrative or judicial processes that may result in antitrust

22  violations. *Allied Tube,* 487 U.S. at 500; *California Motor Transport,* 404 U.S. at 512-13.

23         The validity of a petitioner's[1] actions is central. The Supreme Court has stated:

24        We cannot agree with petitioner's absolutist position that the *Noerr* doctrine
25        immunizes every concerted effort that is genuinely intended to influence
26        governmental action. If all such conduct were immunized then, for example,
27        competitors would be free to enter into horizontal price agreements as long
28        as they wished to propose that price as an appropriate level for
29        governmental ratemaking or price supports… Horizontal conspiracies to or

---

[1] The term "petitioner" is used in this context to refer to one who petitions the government.

boycotts designed to exact higher prices or other economic advantages from the government would be immunized on the ground that they are genuinely intended to influence the government to agree to the conspirators' terms…Firms could claim immunity for boycotts or horizontal output restrictions on the ground that they are intended to dramatize the plight of their industry and spur legislative action.

*Allied Tube,* 486 U.S. at 506.

Looking at the context and nature of the petitioner's efforts to influence the government, the validity of the efforts must be evaluated under standards of conduct set forth by antitrust laws that govern the private standard-setting process. *Id.* at 509. Where the petitioner is at least partially motivated by the desire to lessen competition, and, where petitioner stands to reap substantial economic benefits from making it difficult for the respondent to compete, immunity from antitrust liability is not available, *Id.* at 508-09. Consequently a petitioner may not bias the competitive process without exposing itself to possible antitrust liability for direct injuries. *Id.* at 511.

The sham exception to the *Noerr-Pennington* doctrine was first applied in *California Motor Transport.* There, the defendants maintained a trust fund which they used to oppose all license applications by their competitors with or without probable cause and regardless of the merits of the applications. *California Motor Transports,* 404 U.S. 508, 515 (1972). The supreme court affirmed the Ninth Circuit's reversal of a district court order dismissing plaintiff's antitrust action on *Noerr-Pennington* grounds because it found that the defendant's activities may not have been genuine efforts to influence the government but instead may have been simply a "combination of entrepreneurs to harass and deter their competitors from having 'free and unlimited access' to the agencies and courts, to defeat that right by massive, concerted and purposeful activities." *California Motor Transports,* 404 U.S. at 515. The essential element of the sham exception is an absence of a genuine intent to influence the government but, rather, an

1   intent to injure a competitor. *Mark Aero, Inc. v. Trans World Airlines, Inc.,* 580 F.2d 288, 296-98

2   (8TH Cir. 1978). *Noerr* protection is not available where legitimate lobbying efforts may be

3   accompanied by illegal or fraudulent actions. *See Sacramento Coca-Cola Bottling Co. v.*

4   *Chauffeurs, Teamsters & Helpers Local 150,* 440 F.2d 1096, 1099 (9th Cir. 1971); *In re IBP*

5   *Confidential Business Documents Litigation,* 755 F.2d 1300, 1313 (8th Cir. 1985) (*Noerr-*

6   *Pennington* doctrine cannot be extended to "activities which, although 'ostensibly directed

7   toward governmental action' are actually nothing more than an attempt to harm another "or to

8   "false communications" or "to tortious, violent, defamatory or other illegal acts".

9       There are additional reasons that the *Noerr-Pennington* is inapplicable in this case. First

10  this case involves a municipality acting in an essentially commercial rather than in an executive

11  legislative or adjudicatory capacity. *Sacramento,* 440 F.2d at 1099; *Hecht v. Pro-Football, Inc.,*

12  444 F.2d 931, 941-42 (D.C.Cir. 1971); *George R. Whitten, Jr. v. Paddock Pool Builders, Inc.,*

13  424 F.2d 25, 33 (1st Cir. 1970). Second, the Act sought from the municipality, the award of the

14  transit signal priority contract, is not protected "state action" because the clearly and

15  affirmatively expressed state policy involves the adoption of federal statutory and regulatory

16  requirements published by the Federal Transit Administration. *See F.T.C. v. Phoebe Putney*

17  *Health System, Inc.,* 133 S.Ct. 1003 (2013); *Community Communications Co. v. City of Boulder,*

18  455 U.S. 40 (1982). Finally, the activity is contrary to federal law. *See e.g., Affiliated Capital*

19  *Corp., v. City of Houston,* 735 F.2d 1555, 1566-67 (5th Cir. 1984); *Duke & Co. Forester,* 521

20  F.2d 1277, 1281-82 (3rd Cir. 1975).

21      Where the anti-competitive effects of a restraint on trade result directly from the

22  collective action of the competitors and not, as in *Noerr,* from the independent action of the

23  government, immunity from antitrust liability is not available. *See Superior Court Trial Lawyers*

1   *Ass'n v. F.T.C.,* 856 F.2d 226, 223 (D.C.Cir. 1988). On such situations the restraint is **on** the

2   government, not **by** the government. The mere fact, as here, that the government, as the

3   purchaser, was the target of the anti-competitive activity, does not protect their conduct from

4   regulation. Any argument that the conduct of GTT at issue in this case was political activity

5   protected under *Noerr*, because it was designed to influence a legislative decision fails.

6      Moreover, GTT did not confine itself to efforts to persuade; instead, it ranged and

7   orchestrated a concerted effort to restrict the supply of services in the marketplace. *See Allied*

8   *Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492 (1988). The Sherman Act was not

9   intended to make private parties liable, in the ordinary case, for governmental acts. Thus, where

10  the alleged restraint of trade "was the act of a public official who is not claimed to be a co-

11  conspirator," a private defendant is not ordinarily liable for any damages caused thereby.

12  *Pennington,* 381 U.S. at 671. Moreover, antitrust immunity under *Noerr Pennington* does not

13  extend to private parties who have entered into a "conspiracy" with government actors. *See*

14  *Sessions Tank Liners, Inc. v. Ison Mfg., Inc.,* 827 F.2d 458, 466 (9th Cir. 1987), *overruled,* 487

15  U.S. 1213 (1988); *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240,

16  1252 n. 17 (9th Cir. 1982); *Harmon v. Valley National Bank,* 339 F.2d 564, 566 (9th Cir. 1964).

17  In this case, the municipalities' choice was not an independent government action, but was part

18  of the anticompetitive scheme. As such, the anti-competitive activities of GTT are not protected.

19      D.   *This case is not barred by res judicata; Defendants' argument is judicially estopped*
20           *even so.*

21

22      Plaintiffs originally filed this antitrust case in the Southern District of Illinois on March

23  23, 2012. *KM Enterprises, Inc. v. Global Traffic Techn., et al,* 12-cv-257 (S.D.Ill.). GTT filed a

24  Motion to Dismiss on May 24, 2012, alleging that the issue was required to raised as a

14

1   compulsory counterclaim in the Minnesota District patent suit, which had been pending since

2   2010. Exhibit A. GTT alleged that KME had improperly alleged tortious interference in its

3   antitrust suit. Exhibit B. KME filed its opposition on June 28, 2012, alleging among other

4   reasons that the discovery cut-off in the Minnesota proceeding was July 16, 2012. Exhibit C.

5   KME voluntarily dismissed its tortious interference claim in the antitrust suit in light of the first

6   filed claim in the Minnesota proceeding. Exhibit C. The antitrust motion to dismiss was heard on

7   July 27, 2012. The Southern Illinois District Court mentioned GTT's compulsory counterclaim

8   argument, but based its September 19, 2012 decision on improper venue and lack of jurisdiction.

9   Exhibit D. KME appealed. GTT improperly raised the compulsory counterclaim argument in its

10  January 10, 2013 appellee brief and also at oral argument, heard on February 15, 2013. Exhibit

11  E. The appellate opinion did not address the compulsory counterclaim argument. If GTT's

12  compulsory counterclaim argument would have been viable, the court would have ruled on the

13  issue in time for KME to have filed the antitrust claim in the Minnesota proceeding. There was

14  no such ruling.

15         Meanwhile in the Minnesota District Court proceeding, the Thomson Expert Report was

16  served on GTT close to the time of the Southern Illinois decision, on September 17, 2012. GTT

17  filed the Thomson Report in support of its December 17, 2012 Motion for Summary Judgment,

18  seeking exclusion of arguments involving bidding improprieties. Exhibit F. KME opposed the

19  motion. Exhibit G. GTT also successfully moved to exclude the testimony of Thomson. Exhibit

20  H. GTT was awarded summary judgment on the tortious interference issue and the Thomson

21  Report exclusion was ruled as moot. Exhibit J.  It is important to understand that the citations

22  provided in the table set forth on page 13 of GTT Memorandum in Support of Motion to Dismiss

15

1    are to answers to interrogatories served by KME on January 6, 2013. That content was not used

2    by KME in the patent litigation.

3          "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent

4    positions, precludes a party from gaining an advantage by taking one position, and then seeking a

5    second advantage by taking an incompatible position." *Rissetto v. Plumbers and Steamfitters*

6    *Local 343,* 94 F.3d 597, 600 (9th Cir.1996). It is an equitable doctrine intended to protect the

7    integrity of the judicial process by preventing a litigant from "playing fast and loose with the

8    courts." *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), (quoting *Rockwell Int'l Corp. v.*

9    *Hanford Atomic Metal Trades Council,* 851 F.2d 1208, 1210 (9th Cir.1988)), *cert. denied,* 501

10   U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991) (internal quotation marks omitted). In this

11   case, GTT successfully moved to exclude the tortious interference allegations dealing with

12   bidding irregularities. It is judicially estopped from taking the other side of the issue in this case.

13   Res judicata does not bar KME's antitrust claims as there has been no decision on the merits of

14   those claims.

15                      **CONCLUSION**

16         For the foregoing reasons, KME and Morgan respectfully request that this Court deny

17   GTT's motion to dismiss[2].

18         Dated: January 13, 2015.

19

20

21   ,

---

[2] The document complies with the page limitations, as the Argument begins on page 2.

1

2                                      Respectfully submitted,

3                                      **Jana Yocom, P.C.**

4                                      /s/ Jana Yocom

5                                      _____

6                                      Jana Yocom Rine
7                                      Jana Yocom, P.C.
8                                      320 S. 11th, Suite 1
9                                      Mount Vernon, Illinois 62864
10                                     Telephone: 618-731-1944
11                                     Email: jana.yocom@gmail.com
12
13                                     Martin Zurada (SBN 218235)
14                                     *Zurada Law Group*
15                                     785 Market Street, 16th Floor
16                                     San Francisco, CA 94103
17                                     mzurada@hotmail.com
18                                     Telephone:  415-637-8483
19                                     Local Counsel for Plaintiffs
20
21
22
23                                     *Attorney for Defendants-Appellants Rodney*
24                                     *K. Morgan and KM Enterprises, Inc.*
25

26